No. 32,259

MAY FORD, *Appellee*, v. THE CITY OF KINSLEY, *Appellant*.

(44 P. 2d 255)

Opinion filed May 4, 1935.

*W. E. Broadie* and *H. F. Thompson*, both of Kinsley, for the appellant.
*A. L. Moffat* and *John A. Etling*, both of Kinsley, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages for injuries sustained by plaintiff in falling on the sidewalk of a city street.

The *locus in quo* was as follows: Sixth street is the principal thoroughfare in the city of Kinsley. It runs east and west. On the south side of the street is a sidewalk whose width is not shown. Fronting the north, on the south side of the street and sidewalk, is

a business establishment known as Weinelt's Variety Store. The sidewalk was constructed, in part, of cement blocks about three feet square, and bordered by a curbing on the street side. One of these cement blocks next to the curbing has sagged below the level of the other portions of the sidewalk. The exact variances in the level of this particular cement block from those next to it and to the curbing were as follows:

On its northeast corner .......................... ¾ of an inch
On its northwest corner .......................... ½ of an inch
On its southeast corner .......................... ⅝ of an inch
On its southwest corner .......................... ⅝ of an inch

In this depressed cement block and near its north edge is an iron apparatus for controlling the water supply.

On November 20, 1933, the plaintiff, a woman of 50 years, parked her car next to the sidewalk in front of the variety store and shopped there for ten minutes. On leaving she walked toward her car; her ankle turned when she stepped on this depressed block; this caused her to fall; she struck her knee on the iron cut-off and received various painful and lasting injuries.

Hence this lawsuit. Plaintiff charged the city with negligence, alleging that the described defect had existed for several years and that the city and its responsible officials had long known of it, and that they had negligently permitted the sidewalk to remain in such defective and dangerous condition. Plaintiff's petition particularized her injuries and damages and prayed judgment for $5,000.

Defendant's answer contained a general denial, and among other matters specifically denied that the sidewalk was defective or dangerous.

The evidence developed no serious dispute on the controlling issue of fact. The jury was given a view of the sidewalk. It returned a general verdict for plaintiff for $500, and answered special questions, the most pertinent of which read:

"1. At the time and place in question was the sidewalk in a reasonably safe condition for ordinary use and travel? A. No.

"2. Was the plaintiff's fall caused by the negligence of the defendant or was it caused by the negligence of the plaintiff? A. Negligence of the defendant.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"5. Was the plaintiff's fall caused by her stepping on the edge of the sunken cement block? A. Yes.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"7. Would the plaintiff have seen the sunken cement block and avoided the fall if she had exercised ordinary care as defined by the court's instructions? A. No.

"8. Did the plaintiff exercise ordinary care as defined by the court's instructions? A. Yes."

Judgment was entered for plaintiff and the city appeals, assigning various errors. The one most strongly urged is that the condition of the sidewalk, according to plaintiff's evidence most favorably considered, showed such a slight and inconsiderable defect that the trial court should have ruled as a matter of law that the city was not liable therefor.

The general rule is that merely factual questions of negligence are for a jury to decide, and ordinarily they cannot be disposed of as matters of law. In *King v. City of Parsons*, 95 Kan. 654, 149 Pac. 699, our official report is rather scant in its statement of facts, but the files of the state library (Briefs, 95 Kan., vol. 3) show that the sidewalk was made of bricks, that there was a depression about four feet long and two feet wide, and that some of the bricks lay slanting rather than flat, and some stood on edge, and that the center of the depression was three or four inches deep. Plaintiff stepped backward into that depression; her foot was caught in it; she fell and was injured. This court held that the question of the city's negligence was for the jury.

A case on which appellee strongly relies is *Evans v. City of Hutchinson*, 99 Kan. 477, 162 Pac. 342, where the syllabus conveys the suggestion that the depression in the sidewalk was only half an inch deep, and that it had been caused by the scaling off of the cement crust in an area of two feet by six inches. In the opinion it would appear that not only was there testimony that the depression was half an inch deep, but other evidence that it was as much as three inches deep; but whatever its depth it was characterized as "the hole in the walk." How many miles of half-inch cement crust have scaled off the sidewalks of the cities of this state since the Hutchinson case was decided? Is it still regarded as good law that our municipalities are liable as for negligence when people fall on sidewalks with so little the matter with them? In recent analogous cases where the state highway commission has been subjected to damage suits it has been held that the state is not liable for injuries sustained where the defect in the highway was slight and inconsiderable; and that users of the highway must take notice

of defects which are within plain sight of any person using due care. (*Gorges v. State Highway Comm.*, 135 Kan. 371, 10 P. 2d 834; *Snyder v. Highway Comm.*, 139 Kan. 150, 30 P. 2d 102.)

Looking into the decisions of other jurisdictions, it seems that the rule contended for by the appellant is the prevailing one. In *Jackson v. City of Lansing*, 121 Mich. 279, 80 N. W. 8, the top crust of a cement sidewalk had been broken off and a depression worn therein to a depth of from 1½ to 3 inches below the general level of the walk, and the depression covered an area of 1½ feet to 2 feet. The court held this was not an actionable defect, citing *Shietart v. City of Detroit*, 108 Mich. 309, thus:

"It was perfectly safe to all except the heedless and the public should not be required to make walks so smooth that people cannot stub their toes upon them. Sidewalks in many places require steps, single or in flights, and cross-walks are often upon a different level from the sidewalks which they join. Manholes for sewers must have covers which are above the level of the pavement. Wooden sidewalks become uneven by wear, and must be repaired by planks thicker than the half-worn planks which they adjoin, and flagstones are thrown out of level by the freezing of the ground. In all such cases, where the defect is obvious, the circumstances must be exceptional to authorize a recovery." (p. 311.)

In a similar case, *Weisse v. City of Detroit*, 105 Mich. 482, 63 N. W. 423, the court quoted from an English case where it was said:

"To hold that such a liability was intended to be imposed by the legislature on municipal bodies would be most unreasonable, and would practically burden municipalities to an extent that could never have been contemplated by the legislature." (p. 485.)

In *Beltz v. City of Yonkers*, 148 N. Y. 67, where the plaintiff sought to fasten liability on the city for a fall alleged to be attributable to a depression of 2½ inches in a sidewalk, the court said:

"If the existence of such a defect is to be deemed evidence of negligence on the part of a city, then there is scarcely any street in any city that is reasonably safe within the rule, and when accidents occur the municipality must be treated, practically, as an insurer against accidents in its streets. The law does not prescribe a measure of duty so impossible of fulfillment or a rule of liability so unjust and severe." (p. 70.)

In another New York case, where actionable liability was sought to be fixed on the city on account of a depression in a sidewalk of 1½ inches, it was said:

"The defect in the sidewalk in this case was so slight that it is not in excess of similar defects found in great numbers in every village and city. To hold a municipality for accidents occurring from such defects would entail upon them

a burden beyond that which they are reasonably required to bear." (*Terry v. Village of Perry*, 199 N. Y. 79, 87.)

In 7 McQuillan on Municipal Corporations (2d ed.) § 2974, it is said:

"The municipality need not keep sidewalks absolutely safe, and is not responsible for every accident thereon. . . . To keep all sidewalks in perfect condition at all times is practically a municipal impossibility. For instance, slight inequalities are nearly always found, at one place or another, especially where there is much travel. Minor defects or obstructions are generally not actionable. Generally, in accordance with the principle sustained by a majority of the judicial decisions, early and late, these minor defects or obstructions include slight depressions in sidewalks, . . . ."

In 13 R. C. L. 398, 399, it is said:

"The tendency of the law as evidenced by legislative enactments has been in the direction of making less rather than more stringent the rules of municipal liability in cases of accident to persons using sidewalks. . . .

" . . . But a municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to mere convenient travel, and slight inequalities or depressions of differences in grade, or a slight deviation from the original level of a walk due to the action of frost in the winter or spring, and other immaterial obstructions, or trivial defects which are not naturally dangerous, will not make a municipality liable for injuries occasioned thereby. The fact that the surface of a walk may have become uneven from use, or that bricks therein may have become loose or displaced by the action of the elements, so that persons are liable to stumble or be otherwise inconvenienced in passing, does not necessarily involve the municipality in liability, so long as the defect can be readily discovered and easily avoided by persons exercising due care, or provided the defect be of such a nature as not of itself to be dangerous to persons so using the walk. So it has been held that a municipality is not liable for injuries to a pedestrian resulting from slipping or stumbling over a niche left in a sidewalk around a growing tree, from which the tree has been removed, or over a piece of stone projecting slightly above the level of a crosswalk."

See, also, 5 R. C. L. Perm. Supp. 3368, 3369; Notes in 20 L. R. A., n. s., 640; L. R. A. 1916A 486; 3 A. L. R. 1139; 48 A. L. R. 1154; 20 Ann. Cas. 796.

In view of the foregoing this court holds that in so far as *Evans v. City of Hutchinson* is at variance with the general trend of the decided cases cited and quoted above it should be overruled. The correct rule and the one which should have controlled the decision in the instant case is the one contended for by the appellant city.

The judgment is reversed and the cause remanded with directions to enter judgment for the defendant.